[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Following a decision of this Court in favor of Defendants Roman Natyniak and Marsle Natyniak (collectively, "Defendants") — in which this Court denied the Petition and Complaint of Plaintiff Monarch Builders, Inc. ("Monarch") to Foreclose Defendants' Rights of Redemption and to Quiet Title of property, located at 4 Harding Avenue in East Providence, Rhode Island (the "Property") — Plaintiff moves to recover damages resulting from the purchase of the Property and improvements made thereon.
 Facts and Travel
The facts and travel have been discussed in this Court's previous May 17, 2004 decision, on which this Court relies. This Court herein offers a brief recitation of those facts pertinent to the instant motion relating to Defendant's redemption obligation. On September 29, 1939, Defendants Roman and Marsle Natyniak purchased the Property, to which they later lost tax title in 1960 for failure to pay property taxes to the City of East Providence (the "City"). Thereafter, Margaret Emerson and Allen Emerson (the "Emersons") purchased tax title in 1973 from the City.
The Emersons lost tax title to the Property in 1980, reacquiring it in 1989. Thereafter, the Emersons held tax title until April 21, 1999, at which time Monarch purchased the Emersons' tax title interest via a Quitclaim Deed for a sum of five thousand dollars ($5,000). Immediately thereafter, Monarch Builders expended substantial sums to clear title and physically improve the Property. In an attempt to clear title, Plaintiff filed a Petition to foreclose the outstanding tax lien and a Complaint to Quiet Title. Defendants objected, asserting their right of redemption to the Property.
This Court decided the case in favor of the Natyniaks. Thereafter, Plaintiff filed the instant motion to recover damages, which consist of out-of-pocket expenses totaling $48,983.20. These expenses include attorneys' fees, filing fees, service fees, notice fees, advertising fees, and funds expended in the course of improving the Property.
 Analysis
Section 44-9-29 of the Rhode Island General Laws governs the amount to be paid by a party seeking to redeem property lost in a foreclosure proceeding. Section 44-9-29 states:
 "§ 44-9-29. Redemption by party to foreclosure proceedings
 Any person claiming an interest, on or before the return day or within that further time as may on motion be allowed by the court, shall, if he or she desires to redeem, file an answer setting forth his or her right in the land, and an offer to redeem upon the terms as may be fixed by the court. The court shall hear the parties, and may in its discretion make a finding allowing the party to redeem, within a time fixed by the court, upon payment to the petitioner of an amount sufficient to cover the original sum, costs, penalties, and all subsequent taxes, costs, and interest to which the petitioner may be entitled, together with the costs of the proceeding and counsel fee as the court deems reasonable. The court may impose other terms as justice and the circumstances warrant."
According to the clear language of the statute, Plaintiff is entitled to recover the original sum, costs, penalties, all subsequent taxes, interest, costs of the proceeding and counsel fees. As the language of the statute is clear, this Court is required to give effect to its plain and ordinary meaning. Accent Store Design, Inc. v. Marathon House, Inc.,674 A.2d 1223, 1226 (R.I. 1996) ("It is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings.")
However, in analyzing the damage claim of the purchaser, this Court is also cognizant of the purpose of permitting redemption and the protections provided under redemption laws. Although states have retained certain rights in order to ensure their ability to collect taxes, foreclosure, one of these retained rights, is disfavored in the law because of the particularly harsh consequence to the property owner.Albertson v. Leca, 447 A.2d 383, 388 (R.I. 1982) ("Although tax-sale statutes furnish a strong arm with which to enforce the government's right to its revenues, the statutes also protect the right of property owners to their real estate."). Therefore, the legislature provides property owners with the right to redeem property sold at a tax sale, so as to avoid undue hardship that otherwise would result. Pratt v.Woolley, 117 R.I. 154, 162, 365 A.2d 424, 429 (R.I. 1976) (quoting Black, The Law of Tax Titles § 377 at 468 (2d ed. 1893) ("The redemption of lands from a tax sale creates no new title. It simply expunges the inceptive title of the tax purchaser, places him again in the position of a stranger to the estate, and restores the owner of the land to the precise position he occupied before the attaching of the tax lien which resulted in the sale.")). However, the protection afforded by these laws is not limited to the title owner, but also the tax title purchaser.
In order to redeem the property, the law requires property owners to reimburse the tax title purchaser for his or her expenditures. Section44-9-29; see also Albertson, 447 A.2d at 389. Nevertheless, the statute is silent in one respect: the expenditures for property improvements made by the tax title holder during his or her possession. Although the statute is silent as to improvements, and this question has not been addressed directly by our Supreme Court, Albertson provides some guidance. Albertson, 447 A.2d at 389. Albertson noted that the tax title purchaser is not only entitled to recover the original sum, costs, penalties, all subsequent taxes, costs, interest, costs of the proceeding and counsel fees as provided by statute, but also the monies expended by that tax title purchaser in improving the property, so as to be fully compensated. Id. ("Of great importance is the fact that redemption fully compensates the purchaser for his speculative investment. . . ." The tax title purchaser "would lose nothing; to redeem [the owner] must reimburse [the tax title purchaser] for his [or her] expenditures and pay a penalty.").
Our Supreme Court also recognized this type of compensation, although not permitting it, in Pratt, 117 R.I. at 162, 365 A.2d at 429. Specifically, the Pratt Court found that a previous tax title purchaser could not be reimbursed for property improvements, if these improvements were made prior to the tax sale in question. Id. In that case, the property was sold at a tax sale in 1969, after which the tax title purchaser, Suburban, expended considerable funds improving the property.Id. at 155, 365 A.2d at 425. The owner, however, redeemed the property.Id. In 1972, the property again was sold at a tax sale to Suburban. Suburban sold the property to a third-party, Pratt; to effectuate the sale, Suburban extended a mortgage to Pratt. Id. Thereafter, Pratt attempted to foreclose the right of redemption; however, the owner objected and was permitted to redeem. Id.
Suburban then sought to recover the funds expended on improvements made following the first tax sale. Id. at 156, 365 A.2d at 426. However, the Court found "since that claim arose before the second tax sale it was not relevant to the foreclosure petition." Id. at 162, 365 A.2d at 429. Therefore, the Court "had no jurisdiction, to pass on the validity of extraneous prior adverse claims, such as Suburban's claim for compensation." Id.
The instant case, however, is unlike Pratt. Here, Defendants lost the Property once, pursuant to a tax sale in 1960. Furthermore, Defendants for 44 years made no attempt to redeem the Property until Monarch commenced the instant actions. Following the 1960 tax sale, Defendants did not reclaim the Property, until this Court disposed of the instant actions. Accordingly, Pratt is inapplicable to the instant case, and Monarch is entitled to full compensation for its out of pocket expenses, including the costs of improvements. Albertson, 447 A.2d at 389.
Furthermore, with regard to counsel fees and costs of the proceeding, Defendants argue that Monarch is entitled to recover only those fees and costs associated with the foreclosure proceeding. This Court disagrees. Again, this Court — following the Rhode Island Supreme Court decision inSleboda v. Heirs at Law of Harris, 508 A.2d 652, 655 (R.I. 1986) — recognized the right of a tax title holder to foreclose the right of redemption via a claim of adverse possession. Both proceedings were dependent on each other in the instant case, evinced by the ultimate consolidation of both Complaints. Therefore, this Court finds that both Complaints necessarily were filed in an attempt to clear title to the Property, and therefore, Monarch is entitled to recover the fees and costs associated with both proceedings. This recovery will result in full compensation to Monarch for its expenditures.
Nevertheless, Monarch is not entitled to recover those taxes and penalties paid by the Emersons. Again, Albertson noted that the tax title purchaser should "lose nothing." Albertson, 447 A.2d at 389. It would be unfair to attempt to extend Albertson to offer more than full compensation to the tax title purchaser. Such an extension would result in a windfall for the tax title purchaser, an inequitable result. Accordingly, Monarch is entitled to recover only those taxes and penalties actually paid by Monarch.
 Conclusion
For the foregoing reasons, this Court, applying the clear language of the statute, finds that Plaintiff is entitled to recover the following: $5000 (the cost of the purchase); $3,659.76 (taxes paid by Monarch for the years 1999-2004); and $15,436.72 (the costs of the proceedings and counsel fees for both the Foreclosure of the Right of Redemption and the Petition to Quiet Title). Additionally, this Court finds that Plaintiff is also entitled to recover the value of the improvements that Plaintiff made to the Property in the amount of $9,162.20, as the tax title purchaser is entitled to full compensation.
Counsel shall present the appropriate judgment for entry.