**UNITED STATES of America**

v.

**Louis W. MELUCCI.**

**Cr. No. 88–038 L.**

United States District Court,
D. Rhode Island.

July 5, 1990.

---

Louis W. Melucci, pro se.

Kenneth Madden, Asst. U.S. Atty., Providence, R.I., for respondent.

## MEMORANDUM AND ORDER

LAGUEUX, District Judge.

This matter is before this Court on inmate Louis W. Melucci's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. Melucci, as petitioner, challenges the sentence imposed on him by this Court. He contends that his sentence was illegal because the Court wrongfully used his prior state court felony conviction to increase his sentence pursuant to 21 U.S.C. § 841(b)(1)(B)(ii). Melucci asserts that Congress intended the enhancement provision to apply only to drug "kingpins." He further argues that the enhancement

provision violates the equal protection clause.

In March of 1988, Melucci was convicted in the Rhode Island Superior Court of possession of cocaine (a felony under state law) and possession of marihuana (a misdemeanor under state law). In August of the same year, a federal grand jury, convened to review a different incident, returned a three count indictment against Melucci. The indictment charged Melucci with violations of 21 U.S.C. § 841(a): namely, possession with intent to distribute an excess of 500 grams of cocaine (Count I) and possession with intent to distribute marihuana (Counts II and III). Prior to trial, the government filed with this Court an Information which noted Melucci's prior state court convictions. In February of 1989, after trial, a federal jury found Melucci guilty on all three counts contained in the indictment. The probation officer involved determined that the Sentencing Guidelines called for a sentence of 63–78 months imprisonment. Based on his state court felony conviction, however, this Court applied the mandatory enhancement provision of the Anti–Drug Abuse Act, 21 U.S.C. § 841(b)(1)(B)(ii) (1986). The statute relied on provides in pertinent part:

> If any person commits such a violation after one or more prior convictions for an offense punishable under this paragraph, or for a felony under any other provision of this subchapter or subchapter II of this chapter or other law of a State, the United States, or a foreign country relating to narcotic drugs, marihuana ... such person shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment.

*Id.* This statute increased the sentencing parameters available to the sentencing court from 5–40 years imprisonment with a fine not to exceed $2,000.00 and a term of at least 4 years supervised release to 10 years imprisonment with a fine not to exceed $4,000.00 and a term of a least 8 years supervised release. This Court sentenced Melucci, on Count I, to 10 years imprisonment, a $2,000.00 fine, and 8 years of su-

pervised release. On Counts II and III, the Court sentenced Melucci to 5 years imprisonment to be served concurrently with the sentence imposed on Count I, an additional $2,000.00 fine, plus 8 concurrent years of supervised release. Melucci did not challenge the Court's use of the enhancement statute at the sentencing. Although Melucci appealed his federal conviction, he did not contest the correctness of his sentence. The First Circuit denied his appeal.[1] *See* 888 F.2d 200 (1st Cir.1989).

Melucci now moves to vacate or reduce his sentence. Melucci first argues that 21 U.S.C. § 841(b) is unconstitutionally ambiguous. He contends that the statute's legislative history reveals that Congress intended to target drug distributors and "kingpins" and that, as such, the court should apply the enhancement provision only when the prior conviction used to increase the sentence is analogous to a crime under section 841. He also argues that the Court's use of the enhancement provision based on state law convictions violated the equal protection clause.

### Discussion

*A. Sentence Enhancement*

 When the statutory language in question is clear, the legislative history of the statute should only be used as an "additional tool of analysis". *Garcia v. United States,* 469 U.S. 70, 75, 105 S.Ct. 479, 482, 83 L.Ed.2d 472 (1984), *reh'g denied,* 469 U.S. 1230, 105 S.Ct. 1235, 84 L.Ed.2d 371 (1985). Indeed, when a statute appears clear on its face, "only the most extraordinary showing of contrary intentions ... [will] justify a limitation on the 'plain meaning' of the statutory language." *Id.* The United States Supreme Court has warned, however, that "[r]eliance on ... isolated fragments of legislative history in divining the intent of Congress is an exercise fraught with hazards." *New England Power Co. v. New Hampshire,* 455 U.S. 331, 342, 102 S.Ct. 1096, 1102, 71 L.Ed.2d

188 (1982); *United States v. Martinez–Zayas,* 857 F.2d 122, 130 (3d Cir.1988).

 The sentencing enhancement provision of the Anti–Drug Abuse Act clearly enunciates that a prior state felony conviction relating to drugs will trigger the mandatory sentence increase. The statute specifies that a prior conviction of a "felony under any other provision of this subchapter ... of this chapter *or other law of a State,* ... relating to narcotic drugs" or marihuana shall trigger an enhanced penalty. 21 U.S.C. § 841(b)(1)(B)(ii) (emphasis added). Congress amended the enhancement provision by adding the prior state convictions language after several circuit courts held that the statute applied only to prior federal convictions. *See United States v. Gates,* 807 F.2d 1075, 1081–82 (D.C.Cir.1986) (applying pre-amendment provision to crime committed in 1983), *cert. denied,* 481 U.S. 1006, 107 S.Ct. 1631, 95 L.Ed.2d 204 (1987); *United States v. Johnson,* 506 F.2d 305, 307 (7th Cir.1974), *cert. denied,* 420 U.S. 1005, 95 S.Ct. 1448, 43 L.Ed.2d 763 (1975). Further, section 802 of the Anti–Drug Abuse Act defines a "felony" as "any Federal or State offense classified by applicable Federal or State law as a felony." 21 U.S.C. § 802(13) (1981). Melucci's argument that the prior conviction on which a Court relies to increase the sentence must amount to a felony under federal law, therefore, defies the statute's clear language. Since Melucci's prior cocaine possession conviction amounts to a felony under Rhode Island law, *See* R.I. Gen.Laws § 21–28–4.01(C)(1)(a), this Court correctly imposed the enhanced penalty.

Although Melucci refers to several comments by senators during the hearings on mandatory minimum sentences which make reference to drug "kingpins, masterminds, and dealers," these statements fail to justify a departure from the unambiguous language in the statute. The Third and Eleventh Circuits are in accord with this view.

---

**1.** Although noting that Melucci may have waived his right to challenge the constitutionality of his sentence pursuant to section .2255 by not objecting to or appealing the legality of his sentence, *See United States v. Frady,* 456 U.S. 152, 167–68, 102 S.Ct. 1584, 1594–95, 71 L.Ed.2d

816 *reh'g denied,* 456 U.S. 1001, 102 S.Ct. 2287, 73 L.Ed.2d 1296 (1982); *Norris v. United States,* 687 F.2d 899, 902–04 (7th Cir.1982); *United States v. Sappington,* 527 F.2d 508, 508–09 (8th Cir.1975), this Court will address the merits of Melucci's argument.

*See Martinez–Zayas, supra,* 857 F.2d at 129–30; *United States v. Rodriguez–Suarez,* 856 F.2d 135, 137–38 (11th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 875, 102 L.Ed.2d 998 (1989). Melucci's reliance on Senator Byrd's identification of "kingpins and masterminds" as those who should be punished under the mandatory minimum sentence provision, *See* 132 Cong. Rec. S14301 (daily ed. September 30, 1986), overlooks Congress' sweeping attempts within recent years to obliterate *all* drug use and drug abuse. *See United States v. Holmes,* 838 F.2d 1175, 1177 (11th Cir.), *cert. denied,* 486 U.S. 1058, 108 S.Ct. 2829, 100 L.Ed.2d 930 (1988); *United States v. Woods,* 568 F.2d 509, 513 (6th Cir.), *cert. denied,* 435 U.S. 972, 98 S.Ct. 1614, 56 L.Ed.2d 64 (1978). Cracking down on the high level dealers provided but one method of strengthening the drug laws to combat the growing societal drug problem. *See Rodriguez–Suarez, supra,* 856 F.2d at 138 (even if Congress intended to more severely punish high level drug dealers, statute not limited to such individuals). Obviously, Congress believed that punishing second time offenders more severely would also further its battle against drugs. Had Congress intended to limit the scope of section 841(b) to drug traffickers or dealers or to those convicted of prior federal felonies, it could have so specified as it has in other statutes. *Cf.* 18 U.S.C. § 924(c)(1) (1988) (federal violation to carry firearm in relation to drug trafficking); 21 U.S.C. § 849(e) (repealed 1984) (still applicable to crimes committed before 1987, statute defines "special drug offender" as one convicted of "two or more offenses involving dealing in controlled substances"). Yet, Congress has expressly required a minimum sentence for all prior drug offenders without reference to trafficking or dealing. Applying similar reasoning, the Eleventh Circuit rejected an inmate's argument that Congress intended to punish "kingpins" rather than mere couriers. *Rodriguez–Suarez, supra,* 856 F.2d at 137–38. The fleeting references in the legislative debates to kingpins and masterminds are insufficient to overcome the unambiguous language and the anti-drug policy of the sentence enhancement statute.

## B. Equal Protection

Although Melucci contends that the statute violates the equal protection clause because it creates an unconstitutional classification of persons convicted of drug related offenses, he concedes that the legislature may distinguish between persons in a manner rationally related to a legitimate government objective. *Schweiker v. Wilson,* 450 U.S. 221, 235, 101 S.Ct. 1074, 1083, 67 L.Ed.2d 186 (1981). Other courts have not addressed this specific issue. Courts have, however, rejected equal protection arguments challenging Congress' designation of the quantity, rather than the purity, of drugs involved as a factor which triggers the enhancement provision.[2] *United States v. Whitehead,* 849 F.2d 849, 859–60 (4th Cir.1988); *United States v. Savinovich,* 845 F.2d 834, 839 (9th Cir.), *cert. denied,* 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988). These courts have found that Congress' legitimate concern for protecting the public's health and welfare provides a sufficient rationale for imposing stiffer penalties on some drug offenders. *See also Holmes, supra,* 838 F.2d at 1177. Consequently, there is clearly a rational basis for treating second time drug offenders more severely than first time offenders, thus there is no violation of equal protection.

### Conclusion

For the reasons set forth above, this Court denies Melucci's motion to vacate, set aside or reduce his sentence.

*It is so Ordered.*

---

**2.** Although the fifth amendment does not contain an independent equal protection clause, the United States Supreme Court has applied the equal protection clause to the federal government through the fifth amendment's due process clause. *See Schlesinger v. Ballard,* 419 U.S. 498, 500 n. 3, 95 S.Ct. 572, 574 n. 3, 42 L.Ed.2d 610 *reh'g denied,* 420 U.S. 966, 95 S.Ct. 1363, 43 L.Ed.2d 446 (1975); *Johnson v. Robinson,* 415 U.S. 361, 366 n. 4, 94 S.Ct. 1160, 1165 n. 4, 39 L.Ed.2d 389 (1974); *see also United States v. Hawes,* 529 F.2d 472, 477 (5th Cir.1976).